# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

**AYMAN KHATIB**
3227 South Landl Lane, Apt. 104
Milwaukee, WI 53227,

        Plaintiff,

  v.                              Case No. _____

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

        Defendant.

# C O M P L A I N T

## P R E L I M I N A R Y   S T A T E M E N T

1.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991 [42 U.S.C. § 2000 *et. seq.*], and 42 U.S.C. § 1981.  Plaintiff, Ayman Khatib ("Mr. Khatib") was discriminated against based on his National Origin (Arab, Middle Eastern) by the City of Milwaukee ("the City") by subjecting the plaintiff to adverse terms and conditions of employment because of his National Origin and Religion.  The City also retaliated against Mr. Khatib for opposing discrimination in the workplace.

## J U R I S D I C T I O N   A N D   V E N U E

2.      Jurisdiction over plaintiff's claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991 [42 U.S.C. § 2000 *et. seq.*], and 42 U.S.C. § 1981, is conferred on this Court by 42 U.S.C. § 2000e-5(f)(3).

3. This court has jurisdiction over this matter under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a). The Eastern District of Wisconsin is the federal venue for this action pursuant to 28 U.S.C. § 1391, in that during all times material hereto, the City maintained business offices, and engaged in a business affecting commerce, within the Eastern District of Wisconsin.

## CONDITIONS PRECEDENT

4. All conditions precedent to this action within the meaning of Fed. R. Civ. P. 9(c) have been performed or have otherwise occurred. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on October 19, 2005. On May 26, 2006, the Commission issued a determination of reasonable cause to believe that the City violated Title VII of the Civil Rights Act of 1964. Plaintiff received a Notice of Right To Sue Within 90 Days letter from the U.S. Department of Justice Civil Rights Division dated July 13, 2006.

## DEMAND FOR JURY TRIAL

5. Plaintiff demands that his case be tried to a jury of his peers.

## PARTIES

6. Plaintiff, Ayman Khatib, is an adult male and currently resides 3227 South Landl Lane, Apartment 104 in Milwaukee, Wisconsin.

7. Defendant, City of Milwaukee, is a municipal governmental entity whose main office is located at 200 East Wells Street in Milwaukee, Wisconsin.

8. At all times relevant hereto, the City was an employer within the meaning of Title VII.

## OPERATIVE FACTS

9.     Mr. Khatib is from Palestine and his National Origin is Arab, Middle Eastern.  In addition, Mr. Khatib practices the religion of Muslim.

10.     Mr. Khatib began his employment with the City in 2000 as a patrol officer for the City of Milwaukee Police Department.  However, because Mr. Khatib was out of the country for family reasons at the time he was hired by the City, he sought to defer entry to the police training academy until the next claims of new hired began training.

11.     The City, through the Chief of Police, Arthur Jones, refused this request, and instead offered the allow Mr. Khatib to begin training at a time when nearly one-third of the training course had already been given.

12.     Mr. Khatib denied this proposal because of his concern that attending only a portion of the training course would disadvantage him.

13.     As a result, his appointment as a police officer was withdrawn and Mr. Khatib was required to being the entire application and testing process anew.

14.     Mr. Khatib received his second admission to the City's policy academy on August 20, 2001 and began his training to become a City of Milwaukee Police Officer.

15.     Upon Mr. Khatib's ultimate entry onto duty as a patrol officer on January 23, 2002, he was one of the first Arab-American in the City's history to graduate from the police academy.

16.     Upon graduation from the police academy, Mr. Khatib was assigned to the "early shift" within the City's District 7, a district which is the most "active" in terms of police calls and need for police services.

Case 2:06-cv-01058-LA   Filed 10/11/06   Page 3 of 8   Document 1

17.     The events of September 11, 2001 occurred while Mr. Khatib was in training at the City's police academy.

18.     The City did not take any steps to anticipate or prevent the predictable hostility to which Mr. Khatib, the only Arab-American at the police academy, was subjected.

19.     After graduating from the police academy and being assigned to District 7, not only did the City not take reasonable steps to prevent the worsening harassment on Mr. Khatib, but supervisory and management personnel, acting on behalf of the City, participated in the offensive and degrading conducted directed at Mr. Khatib.

20.     For example, Mr. Khatib was commonly and consistently referred to using epithets such as "camel jockey," "terrorist," and "towel head."

21.     In addition, it was routinely commented that killing persons of Mr. Khatib's national origin was acceptable and that Mr. Khatib should bring his terrorist associates to Milwaukee to rid the City of certain undesirable elements in the local population.

22.     When Mr. Khatib was assigned to a partner who was Indian, the pair was then referred to as the "Convenience Store Squad."

23.     The harassing conduct continued over a matter of years and it significantly affected Mr. Khatib's work environment and his ability to perform his duties as a patrol officer.

24.     On July 30, 2005, Mr. Khatib submitted a report to the City's Chief of Police reporting that he had been experiencing systematic harassment due to his

national origin, race, and religion. At that time, the City failed to conduct any investigation into Mr. Khatib's complaint of discrimination.

25.     Mr. Khatib submitted a second report to the City's Chief of Police dated August 5, 2005 regarding harassment and abusive language relative to the discriminatory comments being made to him by his co-workers and supervisors. At that time, the City failed to conduct any investigation into Mr. Khatib's complaint of discrimination.

26.     On August 26, 2005, during a meeting with a representative in the City's Department of Employee Relations relative to his application for duty disability, Mr. Khatib stated this his stress was such that his psychiatrist had concerns that Mr. Khatib may have feelings of wanting to commit violent acts against fellow officers. (As a result of the harassment endured by Mr. Khatib while employed with the City, Mr. Khatib was diagnosed with Post Traumatic Stress Disorder in July 2005.)

27.     Later that evening, on a charge of misdemeanor "disorderly conduct," the City called out its "SWAT Team," surrounded Mr. Khatib's residence with weapons drawn, arrested Mr. Khatib, and took him downtown for questioning.

28.     The disorderly conduct charges were dropped the following day by the City's District Attorney's office.

29.     In contrast, an American-born officer who was assigned to the same district as Mr. Khatib and under the same command as Mr. Khatib, had repeatedly called the district's office and had made a bomb threat against the district. For this, the officer was charged with a felony. However, the City took no action against this officer

on the same day that the incident occurred, and waited to arrest him only after a court proceeding the next business day.

30.     After the disorderly conduct charges against Mr. Khatib were dropped, the City conducted its own internal investigation, in which findings were made against Mr. Khatib.

31.     Based upon its internal investigation, the City found that the harassment of Mr. Khatib did not occur and that he suffered no job-related disability.

## FIRST CLAIM FOR RELIEF: TITLE VII DISCRIMINATION BASED ON NATIONAL ORIGIN

32.     As and for his first claim for relief, Mr. Khatib re-asserts the allegations recited above in paragraphs 1 through 31, inclusive of this Complaint and fully incorporates those paragraphs herein by reference.

33.     The allegations more particularly described in paragraphs 1 through 31 inclusive of this Complaint, constituted intentional discrimination against Mr. Khatib on the basis of his National Origin, i.e., Arab, Middle Eastern, with malice or with reckless indifference to the federally protected rights of Mr. Khatib, in violation Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, [42 U.S.C. § 2000 *et. seq.*], causing Mr. Khatib to suffer losses of wages, benefits, expenses, insurance, advancement opportunities, emotional pain, suffering, humiliation, embarrassment, and mental anguish.

Case 2:06-cv-01058-LA   Filed 10/11/06   Page 6 of 8   Document 1

## SECOND CLAIM FOR RELIEF: 42 U.S.C. § 1981 DISCRIMINATION BASED ON NATIONAL ORIGIN

34.     As and for his second claim for relief, Mr. Khatib re-asserts the allegations recited above in paragraphs 1 through 33, inclusive of this Complaint and fully incorporates those paragraphs herein by reference.

34.     The allegations more particularly described in paragraphs 1 through 33 inclusive of this Complaint, constituted intentional discriminatory practices against Mr. Khatib on the basis of his National Origin, i.e., Arab, Middle Eastern, with malice or with reckless indifference to the federally protected rights of Mr. Khatib in violation of 42 U.S.C. § 1981, causing Mr. Khatib to suffer losses of wages, benefits, expenses, insurance, advancement opportunities, emotional pain, suffering, humiliation, embarrassment and mental anguish, all to his damage.

## THIRD CLAIM FOR RELIEF: TITLE VII RETALIATION

35.     As and for his third claim for relief, Mr. Khatib re-asserts the allegations recited above in paragraphs 1 through 34, inclusive of this Complaint and fully incorporates those paragraphs herein by reference.

36.     The allegations more particularly described in paragraphs 1 through 34 inclusive of this Complaint, constituted intentional adverse action against Mr. Khatib in response to his attempts to engage in statutorily protected conduct or expression in opposition to discrimination based upon his National Origin, i.e., Arab, Middle Eastern, with malice or with reckless indifference to his federally protected rights, in violation of Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, [42 U.S.C. §

2000 *et. seq.*], causing Mr. Khatib emotional distress, embarrassment, pain and suffering, losses of income, advancement opportunities, and expenses, all to his damage.

**WHEREFORE,** plaintiff, Ayman Khatib, demands judgment against the defendant, City of Milwaukee, as follows:

A.      Judgment against the defendant ordering the defendant to reinstate Mr. Khatib into his former position as a patrol office, or into another open position of similar pay and responsibility for which he is qualified;

B.      Judgment against the defendant awarding damages for monetary losses and expenses;

C.      Judgment against the defendant awarding costs, disbursements and attorney fees;

D.      Judgment against the defendant awarding compensatory damages for physical harm, mental suffering, distress, anxiety and emotional trauma; and

E.      Such other relief as the Court deems just and equitable.

Dated this 10th day of October, 2006.

s/Robert M. Mihelich

Robert M. Mihelich
State Bar No. 1022106
Attorney for the plaintiff
LAW OFFICES OF ROBERT M. MIHELICH
2665 S. Moorland Road, Ste. 200
New Berlin, WI 53151
Phone: (262) 789-9300
Fax: (262) 785-1729
Email: attyrmm@bizwi.rr.com